## Leinaweaver *against* Stoever.

The acceptance by a widow of her share of her deceased husband's intestate estate, under the statute of distributions, is not an election such as will bar her from recovering dower out of land which her husband had aliened in his lifetime.

**ERROR** to the Common Pleas of *Lebanon* county.

Elizabeth Stoever, widow of Tobias Stoever, deceased, against the administrators of Peter Leinaweaver, deceased, with notice to his heirs.

To April Term, 1825, the plaintiff, Elizabeth Stoever, brought an action against Peter Leinaweaver to recover her dower in a certain brick house and lot of ground in Lebanon, and on the 16th of January 1828, recovered a judgment. The present action was a *scire facias* to show cause why that judgment should not be revived, and a writ of seisin issue; in which the following case was stated, and considered in the nature of a special verdict.

" This *scire facias* is brought to show cause why the judgment set forth in the said *scire facias* should not be revived; and why the said Elizabeth, her seisin of dower in the said premises, should not forthwith have.

Tobias Stoever, the husband of said Elizabeth, died intestate on or about 1st September 1824; and an inventory was exhibited in the register's office of Lebanon county, on 18th September, 1824, which is made part of this case stated.

The administrators of said Tobias, viz: John Stoever, Christian Kreider, and Philip Stine filed their administration account on the estate of said Tobias in the proper office, on 3d December 1824, and a supplemental account on 7th February 1837, which are also made a part of this case stated.

[Leinaweaver v. Stoever.]

The said Tobias Stoever died intestate, seized and possessed of certain real estate in Lebanon county, viz: a messuage and tract of land, situate in Lebanon township, containing 208 acres, with the appurtenances, &c. On the petition of John Stoever, Christian Kreider, and Philip Stine, heirs and legal representatives of said Tobias Stoever deceased, a writ of partition issued out of the Orphans' Court of Lebanon county, on 6th November 1824, under which the said premises were divided into two parts; one thereof containing 113 acres 65 perches, and the other 111 acres 132 perches. The first thereof was appraised at $41 per acre, and the other at $38 per acre. Said partition and valuation were duly confirmed; and the tract containing 113 acres 65 perches was accepted at the valuation, by John Stoever, on 21st March 1825, who entered into recognizance in the sum of $9266, conditioned. The other tract, on same day, was accepted by Jacob Stoever, who entered into recognizance in the sum of $8536. The said John and Jacob were sons and heirs at law of said Tobias Stoever, deceased.

All the proceedings of the Orphans' Court relative to the partition of the real estate of Tobias Stoever, deceased, are made part of this case stated.

The said Elizabeth, the plaintiff in this cause, is to be considered, for the purposes of this case stated, as having received her interest annually, on the third part of the valuation money of the said two tracts of land, accepted by John and Jacob Stoever.

The said Peter Leinaweaver died intestate and insolvent about February, 1835. At August Term, 1835, his administrators, viz: George Leinaweaver, John Krause, and George W. Kline presented a petition to the Orphans' Court of Lebanon county for an order of sale of his real estate for the payment of debts; and an order issued accordingly. After various proceedings, an *alias* order of sale issued, and the said administrators sold, under said order, the premises in which the said judgment in dower was recovered, to Jacob B. Weidman, Esq., for the sum of seven thousand dollars, and to hold the same under and subject to the legal claims and demands of Elizabeth Stoever, widow and relict of Tobias Stoever, deceased, whatever the same may finally be decided to be, if any, he being the highest bidder, and that the highest and best price bidden for the same; which sale was duly confirmed by Orphans' Court on 14th November 1836. And said Jacob B. Weidman paid the purchase money, and got possession of the premises on 1st April 1837, of which he sold one undivided half to George Leinaweaver, his heirs and assigns for ever, for $3500, and they are now in possession of the said premises as tenants in common.

All the proceedings in the Orphans' Court of Lebanon county, relative to the estate, real or personal, of Peter Leinaweaver, deceased, are made a part of this case stated.

I. — 21          o.*

A suit was instituted in the Common Pleas of Lebanon county, to April Term, 1825, No. 72, by John Stoever, Christian Kreider, and Philip Stine, administrators of Tobias Stoever, deceased, against Peter Leinaweaver, to recover the amount of four bonds, given for the unpaid part of the purchase money of the said premises, which bonds were given by said Peter Leinaweaver to said Tobias Stoever, in April, 1814, when said Peter Leinaweaver purchased the premises from said Tobias, which he did per deed of 1st April 1814.

Peter Leinaweaver having died, his said administrators were substituted as defendants in said suit, and a judgment was recovered against them in August 1838.

All that said plaintiffs ever received on said judgment, appears from the report of auditors, distributing the assets of Peter Leinaweaver's estate.

At the time of executing the deed from Tobias Stoever to Peter Leinaweaver, he, the said Tobias Stoever, gave to said Peter Leinaweaver a bond of indemnity relative to the dower of his wife, &c., dated 1st April, 1814; which deed and bond of indemnity are also made a part of this case stated.

Since the execution of the deed from Tobias Stoever to Peter Leinaweaver, and before the death of Peter Leinaweaver, a new stable was erected on the said premises in place of an old one that was on at the time of the sale to P. Leinaweaver. A new house, wherein is an apothecary's shop, also a new stable, were erected also on the premises by Peter Leinaweaver, after his said purchase.

[The brick house and tavern-stand rent for . . $233 33 p. an.
The house, &c., occupied by G. Leinaweaver,
   which was erected by P. Leinaweaver in his
   lifetime, rent for . . . . . . . . . . . 125 00  "
The house, &c., occupied by G. W. Kline, rents
   for . . . . . . . . . . . . . . . 125 00  "
                             $483 33

The taxes and repairs are estimated as having amounted to $60 per annum since said Jacob B. Weidman obtained possession.

The brick house and tavern-stand, above mentioned, remained without producing any rent to the owners, from 1st April 1837, to 1st April 1838.]

The counsel for the plaintiff admits the above stated facts, *included in brackets*, as facts; but does not admit that they are material or pertinent to the issue in this case. If material or pertinent, the court are to consider them; otherwise not.

It is admitted, that independent of all buildings and repairs, made after the purchase by Peter Leinaweaver, the premises on which the judgment in dower was obtained, would now rent for

[Leinaweaver v. Stoever.]

three hundred dollars a year, clear of taxes and repairs; and would have rented at the same rate from 1st April 1837.

The pleadings in the cause, as filed and entered, and the records in the original suit, and all records, proceedings, and papers referred to, are considered as part of this case stated; and if any thing is defectively stated, the case is to be immediately amended so as not to delay a decision.

If the court should be of opinion that the plaintiff is entitled to any judgment, the court are to give such judgment as the law authorizes, with costs. If the court should be of opinion that the defendants are entitled to judgment, the court are to give judgment for the defendants, with costs."

The court below rendered a judgment for the plaintiff for the following reasons :—

PARSONS, President.—In this case stated, there are three questions which arise for the opinion of the court.

1. Whether, when the husband of a widow dies intestate, seised of real estate, and that property is divided among the heirs on a valuation by order of Orphans' Court, and the widow recovers her dower out of such real estate, she can recover her dower at common law, out of lands of which her husband was seised during coverture, but aliened by him before his death.

2. Whether, when lands are sold at Orphans' Court sale, thus aliened, the purchaser takes them discharged of the widow's dower at common law.

3. Whether, after a widow has recovered a verdict in an action of dower, and issues a *sci. fa.* to revive the judgment of dower and have a writ of seisin, the defendant is not concluded by that verdict from denying her right to the writ of seisin and having her dower set off to her. If the last question should be decided in favour of the plaintiff in this case, the two former propositions need not now be considered in the decision of the cause.

It appears from the facts in the case stated, that Tobias Stoever, the husband of the plaintiff, died in September 1824; that, at November Term, 1824, an inquest was awarded upon his real estate; and in March 1825, the heirs gave a recognizance in the Orphans' Court and took the property at the valuation. To April Term, 1825, No. 12, this action of dower was brought, and a verdict and judgment given, 11th June 1828, which was afterwards affirmed by the Supreme Court. Under this state of facts, I am of the opinion that the plaintiff is entitled to have her writ of seisin: for, admitting for argument's sake, that the first position of defendant's counsel is correct, and by her accepting the dower under the statute, she is barred at common law, still a court of competent jurisdiction have decided that she is not, and that decision now stands unreversed. She must have made her election before that suit was brought, at all events before the trial, because the case stated admits she received the interest annually from

1825 to this time, and if she made her election before trial and after suit brought, the defendant should have pleaded *puis darrein continuance*, when it would have been received by the court, if there was any thing in the defence, and it had been a legal ground to defeat the plaintiff's right.

For the purposes of this cause, the court are bound to presume that defence was shown and the court adjudicated on the same; we cannot go back of the judgment. It has been determined that all these matters do not bar her of dower, at least the court are bound to infer so.

For these reasons we think the first and third propositions are disposed of.

As to the second, the terre-tenants purchased the land at Orphans' Court sale, after the verdict and judgment in dower and when they had full notice of the plaintiff's claim. It was a judicial sale of all the interest of the deceased; that was sold and no more, and subject to all existing incumbrances; and the right of dower was a legal incumbrance, and could not be barred by 21 years' possession.

The court, therefore, render judgment of revival on the *sci. fa.*, and order that a writ of seisin in dower issue; they also order a substitution of the heirs of Peter Leinaweaver on the record.

*Weidman*, for plaintiff in error, cited *Act of* 1764, *sections* 2, 8, 9, 10; 3 *Smith's Laws* 156; *Act of* 1794; 3 *Smith's Laws* 148, *sec.* 13. That part of the estate which the widow takes under the intestate laws is in lieu of her dower at common law. Why should she have her interest in the estate of her husband increased by the sale of the very land out of which she now claims dower, and recover her dower at common law out of it also? *Cond. Eng. Chan. Rep.* 361; *Addison* 351; 2 *Yeates* 289; 17 *Serg. & Rawle* 25; 3 *Rawle* 396; 2 *Watts* 263, 381.

*Pearson*, for defendant in error.

The opinion of the Court was delivered by

Gibson, C. J.—The argument to prove this a case of election, is that when the widow accepted her share of the intestate's estate under the statute of distribution in the Orphans' court, she received, as an equivalent for her dower in the land aliened by her husband, her third part of the purchase money which had gone into the mass of his estate either as personal property or other land bought with it; and, consequently, that she ought not to have both her dower and the price of it. But was any part of the purchase money the price of her dower? In the supposition that it was lies the fallacy. Take the strongest case possible—the case of a sale by the husband without his wife's co-operation, followed by his death and intestacy before payment of the bonds taken for

[Leinaweaver v. Stoever.]

the purchase money—and it will still result that she would be entitled, not only to a third of them as part of his personal estate, but to dower in the land also; nor can it be thought that she would thus have a double satisfaction. Why was her dower left in the land? Evidently because the husband had no power over it, and it was therefore neither sold nor paid for. Then, his interest alone having been sold, the purchase money paid for it is an equivalent for nothing else; and this consideration practically enters into the contemplation of the husband and his vendee in the concoction of the bargain. No man gives as much for an estate encumbered with an incipient right of dower as he would give if it were free from it; and the chances of the wife's survivorship, where she is not a party to the deed, are calculated and deducted from the purchaser's estimate of the unencumbered value. What he buys and pays for, then, is not the title unaffected by the wife's contingent interest in it, but the husband's part of it exclusively, being what the husband can part with independently of her concurrence and will. When, therefore, his exclusive portion of the estate is converted into money, why should she not stand in relation to the produce of it as she does to any other part of his personal property? Should he die intestate while it remains personal, she would get a third of it absolutely; or if he should have invested it in land again, she would have acquired an additional estate of dower by it, and she would also retain her dower in the tract sold. It may perhaps be thought that she might in this way, if the principle were sound, gain the whole purchase money in the shape of land by repeated conversions of it; but to suppose so is fallacious, because each re-purchase would be successively less in value than the preceding one by the ratio of the dower taken out of the preceding sale till the reinvestments would, in the end, be frittered away to almost nothing; and the value of her dower in all the tracts thus successively purchased, would eventually be no more than her interest in the price of the tract first sold. There might be such a case, but it would never happen in practice. A widow, therefore, retains her dower reserved in her husband's conveyance—for it is reserved when it is not parted with—as her proper estate, and not as a part of the husband's; and when she claims what also is hers by the intestate laws, the heirs cannot compel her to bring such dower into hotchpot. Neither can her husband's alienee object that she has received an equivalent for it from the husband's estate. For whose benefit would she relinquish her dower? For the benefit, not of the husband's representatives, but of a stranger to them. She calls on him for what she purchased by her marriage, and what he has not paid for; and it is no matter to him that she has received her share of another part of the husband's estate elsewhere. There is no election in such a case, and she may take both. The other part of the defence is still more palpably unfounded. It never

[Leinaweaver v. Stoever.]

was before imagined that dower consummate by the death of the husband, could be devested by any judicial sale except for his debts; and in no other country or state than Pennsylvania, is the sale of even an initiate right of dower for his debts an exception. The award of a writ of seisin against the vendee's heirs, was entirely proper.

Judgment affirmed.