# ˙Bradfords *versus* Kents.

*Action of Dower against Devisee.— Orphans' Court, power of as to Dower at Common Law.—Election to take under Will, proof and effect of.*

1. A widow electing not to take a devise or bequest under the will of her husband, may maintain her action at common law against his devisees, to recover dower out of the lands devised to them, of which he died seised and in possession.

2. The Orphans' Court has no power to assign to a widow common law dower in any case: jurisdiction over actions therefor belongs exclusively to the common law courts.

3. An election by a widow to take under her husband's will in lieu of dower at law, may be evidenced by matter *in pais* as well as of record: but it must be shown that she had requisite knowledge of the value and character of her husband's estate, and that her intention was consistent with such choice.

4. But if, with such knowledge, she receives the bequests in the will, she cannot afterwards claim that she did not intend to relinquish her dower.

[Bradfords *v.* Kents.]

5. After seventeen years had elapsed from the time of doing acts such as usually constitute an election by a widow, *Held,* that it could not be denied by her that they were done in pursuance of an intent to take under the will.

ERROR to the Common Pleas of *Greene county.*

This was an action of dower *unde nihil habet,* brought by Jesse Kent and Hannah his wife, late widow of Henry Bradford, deceased, for the use of said Hannah, against Samuel Bradford and John Bradford, to recover her dower in two hundred acres of land in Whitely township.

To a declaration in the usual form the defendant pleaded, first, that Henry Bradford was the owner of the land out of which the dower is claimed, and had died seised thereof, and that by his will he had devised certain property to said Hannah, in lieu of dower, which she accepted. Subsequently defendants filed the following special plea :—

" And now, March 26th 1862, the defendants come and defend the wrong, and say, that the said plaintiffs should not maintain their action, because that Henry Bradford, deceased, by virtue of whose seisin the female plaintiff claims dower, by his last will and testament, dated the — day of March 1843, and duly registered in the office of the register of wills in and for said county, did, *inter alia,* devise his real estate aforesaid to the said Hannah Bradford for and during her natural life, provided she remained his widow, and certain personal estate therein mentioned absolutely ; and that the said Hannah remained in possession of said real estate for several years, to wit, till her marriage to Jesse Kent, one of the plaintiffs in this suit, and that she selected the personal property mentioned in said will from the property of said Bradford, deceased, and the same was appraised and set apart to her separate use, and that the possession of the same was delivered to the said Hannah Bradford, the female plaintiff ;" and on the issue thus made up, the parties went to trial.

On the trial, the plaintiff proposed to ask one of defendant's witnesses, who was guardian of the children of deceased, upon cross-examination, what had become of the property spoken of by him, as set apart for the widow, for the purpose of explaining the testimony given by witnesses, bearing upon an alleged election to take these articles. To which the defendant's counsel objected—

" 1. Because it is not a proper cross-examination.

" 2. The acts of the guardian could not be given in evidence to affect the rights of the tenant. And,

" 3. Because the female plaintiff had no interest in the property after her marriage to Kent."

The court overruled the objection, and admitted the testimony.

The plaintiff also proposed to prove the number, ages, and

[Bradfords *v.* Kents.]

condition of Henry Bradford's children at the time of their father's death; to which defendants objected, but the objection was overruled, and the testimony admitted.

In the charge to the jury the court below said:—" On the part of the plaintiff, it is contended that she did not remain upon the land in pursuance of her estate under the will; but that being left upon it at the death of her husband, with' a family of small children, she remained there only for the purpose of keeping the children together, and raising them decently and advantageously upon their own land; and that she did actually manage it for their benefit, and not for her own. If you shall find that this was the true reason of her remaining upon the land, then that fact would not bar her recovery here. And we instruct you, in like manner, respecting the acceptance of the farming utensils and personal property given her in the will. If she took these merely for the purpose of carrying on the business of the farm, and keeping up the household and maintaining the family, this would not be an election to accept under the bequest."

Under these rulings there was a verdict and judgment in favour of the plaintiff. Whereupon the case was removed into this court by the defendant, who assigned for error,—

1. The want of jurisdiction in the Common Pleas.

2, 3. The admission of the testimony above mentioned.

4. The instruction given to the jury as above.

*Downey* and *Crawford*, for plaintiff in error, in support of the first assignment of error, cited and relied on the Act of March 29th 1832, §§ 36, 41, and argued that, under the Act of 1806, the common law remedy was excluded by that provided by statute: citing 9 Watts 19; 3 Barr 6; 5 Harris 199.

On the second and third assignments they insisted that the objection made on the trial to the admission of the evidence was valid, and should have been sustained by the court below.

The fourth assignment of error they endeavoured to sustain by insisting that the question as to the purpose for which the widow remained on the farm, was submitted to the jury without any evidence on that subject: citing 10 Barr 363; 1 Iredell 440; 5 W. & S. 61.

*Black*, *Phelan* and *Buchanan*, for defendants in error.

The opinion of the court was delivered at Philadelphia, January 5th 1863, by

STRONG, J.—The first assignment of error presents the question whether a widow, electing not to take a devise, or a bequest under the will of her husband, can maintain a common law action against his devisees to recover dower out of the lands

[Bradfords *v.* Kents.]

devised to them, of which he died seised and in possession.  It is insisted by the plaintiffs in error that her remedy is exclusively in the Orphans' Court.   The argument is, not that any Act of Assembly has expressly taken away from the Courts of Common Pleas jurisdiction in such a case, but that a new remedy has been .created which must be sought in the Orphans' Court; and that this new remedy, under the Act of March 21st 1806, necessarily takes away all others.   Denial of jurisdiction to the court of common law is therefore an inference from the doctrine asserted that the legislature has provided a mode of recovering dower in the Orphans' Court, in all cases where the husband of the demandant dies seised and possessed of the land out of which her dower is demanded.   In view of existing statutes, the inference is not certain even if the premises be admitted.   But can it be maintained that power has ever been conferred upon the Orphans' Court to enforce a widow's right to common law dower in any case, or to decree a substitute for it, out of lands which her husband disposed of by will, though he may have died seised and in. undisputed possession?   I think it cannot.   The Orphans' Court is a court of limited jurisdiction, and possesses no other powers than such as have been given to it by the legislature.   It is therefore in the Acts of Assembly relating to it that the power asserted is to be found, if it exists at all, and it is there that the remedy of a testator's widow is pointed out, if there be any remedy for denial of her dower enforceable in that court.   It will not answer to say, as is sometimes loosely said, that the estate of every decedent passes of course through the Orphans' Court for settlement, and that whatever is necessary for its legal distribution may there be done.   In very many cases it is not true that the real estate of a decedent comes into the Orphans' Court.   Generally that court has nothing to do with lands that pass by will, nor indeed with any lands of a decedent, unless they are needed for the payment of his debts, or unless partition among heirs is required to be made.   And even in such partition its jurisdiction is not exclusive.   The Act of April 21st 1846, P. L. 426, enacted that "nothing contained in the act entitled ' An Act relating to the Orphans' Court, passed the 29th day of March 1832, shall be construed to give the Orphans' Courts of this Commonwealth exclusive jurisdiction in the partition and valuation of the real estate of intestates, or to prevent any of the parties interested in such real estate from proceeding by action of partition in the other courts of this Commonwealth, which have jurisdiction of the action of partition.' "   To show then that the Orphans' Court alone can be resorted to to enforce the assignment of a widow's dower in lands of which he died seised, and which he disposed of by will, something more is

necessary than the vague and inaccurate assertion that the estate of every decedent passes of course into that court.

Before proceeding to a more minute examination of the question raised by the first assignment of error, a few observations bearing upon it may be premised. The common law of England is the law of this state, except so far as it has been altered by our legislation. Under the common law, a widow is entitled to a peculiar estate technically called dower, in all the lands of which her husband was seised during her coverture, and especially in all of which he died seised. In claiming it, the widow does not claim as an heir. She is a purchaser, and her title is paramount to that of the heir. Some things indeed bar dower in this state, which have no such effect in England. Such as the wife's joinder in a deed with her husband with a separate acknowledgment, and judicial sales, either before or after his death, for the payment of his debts, but in the absence of these, a widow's right to dower is as absolute with us as it is in England, and even more extensive. Thus she is dowable of estates of which her husband had no legal seisin, 12 S. & R. 18; of trust estates, improvement rights, &c., 2 Yeates 515, 2 S. & R. 556; 2 Jones 149. In cases of the intestacy of the husband, a substitute is provided for it, but, being a common law right, it is not taken away by anything less than unequivocal statutory enactment. The presumption always is that a statute does not intend a greater change in the common law than is necessary to give effect to the enactment.

It is also noteworthy that nowhere, in all our Acts of Assembly, is power conferred upon the Orphans' Court to assign to a widow common law dower in any case, not even in a case of intestacy. No one asserts that such a power has been conferred. All that is claimed is that a new interest has been provided for the widow, which the statute declares to be in satisfaction of her dower at common law, and which the Orphans' Court is empowered to decree to her. There are, however, but two substitutes for dower recognised by our legislation, which did not exist at common law, if indeed there be more than one. The first is an accepted devise or bequest under the will of the deceased husband, which by the Act of April 4th 1797, re-enacted in the Statute of Wills of April 8th 1833, is declared to be in lieu and bar of the widow's dower out of his estate, in like manner as if it were so expressed in the will, unless declared otherwise in the will. This is little more than the introduction of a new rule of construction. Yet even this does not take away her right of dower out of lands aliened by the husband in his lifetime, and during her coverture: Borland *v.* Nichols, 2 Jones 38. The other substitute is the share of the estate of an intestate, directed to be allotted to the widow under the intestate laws. This the Act

of April 19th 1794 enacted, should " be in lieu and satisfaction of her dower at common law," and the revised Act of April 8th 1833 (passed on the same day with the Statute of Wills), repeated the enactment in substance, and without change of meaning. It is plain, from the language of these acts, that the legislature did not intend to interfere with a widow's right of dower out of any lands except those embraced in the intestate laws. So far as those lands are concerned, she is shut up to the substitute, but lands which do not descend under the intestate laws are unaffected by the enactment. So it has been ruled by this court: Galbraith v. Green, 13 S. & R. 85; Leinaweaver v. Stoever, 1 W. & S. 160; Borland v. Nichols, *supra*. In all these cases the right of the widow to maintain the common law writ of dower was sustained. And dower at common law is not to be confounded with the interest which a widow takes under the intestate laws, or that which she may take under the will of her husband. Her right, under the intestate laws is, by the first section, confined to those lands which the decedent has not " disposed of by will," or " otherwise limited by marriage settlement." It is altogether peculiar in its nature, in most cases resembling an annuity or rent-charge, not a part of the land itself, assigned by metes and bounds. Nor are damages recoverable for failure to assign it. In Hinnershitz v. Bernhard, 1 Harris ·518, the question came directly before this court, and it was held that the word " dower," in the Statute of Wills, means common law dower, and is therefore something different from the share given to the widow by the first section of the Intestate Act.

Now, if a widow, electing dower under the eleventh section of the Statute of Wills, rather than the estate or property bequeathed or devised to her by the will of her husband, has any remedy in the Orphans' Court for the recovery, either of dower or any substitute for it, the remedy must be found in those Acts of Assembly which give the court power to make partition among the heirs of the decedent. It is not asserted that such power is to be found anywhere else. But partition in the Orphans' Court is only of real estate of which a decedent has died intestate, with an exception presently to be noticed, and the legislature has declared what shall be decreed to the widow. It is her interest under the intestate laws, not dower. The Act of June 16th 1836, P. L. 792, defining the jurisdiction and powers of the Orphans' Court, enacted that its jurisdiction should " extend to and embrace the partition of the real estate of *intestates* among the heirs." Until 1840, all the provisions in our Acts of Assembly which gave the Orphans' Court jurisdiction in partition were adapted to the simple case of an intestacy where an estate was held in severalty by the intestate, and not adversely, either in whole or in part, by any of the children, or a stranger,

in other words, to a case of intestacy where the intestate died sole
seised : Ell's Estate, 6 Barr 457.    Even in cases of intestacy,
where the lands were in the adverse possession of another, the
Orphans' Court had no power to decree partition between the
widow and heirs : Galbraith *v.* Green, 13 S. & R. 93 ; McMasters
*v.* Carothers, 1 Barr 324.    Certainly it never was decided, nor,
I presume, supposed by any lawyer, that the Orphans' Court
had jurisdiction to make partition of lands devised, prior to the
passage of the Act of April 13th 1840.    That act enlarged its
jurisdiction in the partition and valuation of the real estate of
decedents to all cases of testacy wherein the parties interested,
or any of them, are minors ; or where the course of descent is
not altered by the provisions of the last will and testament of
the decedent (a substantial case of intestacy.)    It also declared
that the proceedings shall be the same as in cases of intestacy,
subject however, to the provisions of the last will, and the true
intent and meaning of the testator, and it provided expressly
that nothing in the act contained shall be construed to pre-
vent any of the parties interested in the said real estate, from
proceeding by action of partition as heretofore.    Thus, though
the jurisdiction was enlarged by this act, the right to proceed in
a common law court was expressly reserved.    And the proceed-
ings in the partition are required to be as in cases of intestacy.
No new right is given to the widow.    The court is not authorized
to substitute anything for her dower.    On the contrary, the par-
tition must be made subject to the provisions of the will and the
intent of the testator.    In no Orphans' Court partition, is any
power given to the court to assign to the widow anything else
than a widow's interest as defined by the intestate laws, or, per-
haps, under the Act of 1840, that interest which was given to
her by the will of her husband.    But her dower is neither, as we
have already seen, and as was ruled in Hinnershitz *v.* Bernhard's
Executor.    That dower, therefore, she cannot obtain by any decree
in partition in the Orphans' Court, and for it the legislature has
provided no equivalent.    Then, if the widow of a testator, refus-
ing to take under his will, is entitled to common law dower, and
the Orphans' Court cannot assign it, there is nothing to interfere
with the jurisdiction of the Courts of Common Pleas.    And, even
if dower could be obtained in Orphans' Court partition, its juris-
diction in partition is only concurrent, and therefore, the Act of
1806, enlarged as its meaning has of late been held to be, does
not affect the common law remedy.

In the case now before us, it is clear that the Orphans' Court
is not authorized to make partition even, much less to assign
dower.    The husband did not die intestate.    He devised all his
lands.    Nor is it such a case of testacy as by the Act of 1840,
authorized that court to make partition.    The course of descent

was changed by the will, and it does not appear that any minors are now interested.

If it be said that when a testator's widow refuses to take under her husband's will, he is intestate as to her, and therefore she must go into the Orphans' Court for her dower, the answer is plain. The lands have been "disposed of by will," and therefore by the words of the Act of Assembly they are excluded from the operation of the intestate laws, and from Orphans' Court partition. But if not so, only that which the widow refuses to take is undisposed of, and therefore, there is but a partial intestacy. Only that is subject to Orphans' Court partition, and only in that, at most, is a substitute for dower provided. Out of that it is impossible to assign her dower, for her dower is out of all her husband's lands, and that, as we have seen, is unknown to Orphans' Court partition. So it was substantially ruled in Hinnershitz *v.* Bernhard. There a testator had bequeathed and devised a portion of his estate to his widow, by will dated April 8th 1848. She refused to take under the will and claimed her dower. In delivering the unanimous opinion of this court, Chief Justice Gibson said "there was no intestacy, and the intestate laws have never operated on land that has passed by will. In no part of them is the widow's share called dower. In this instance, she took by the common law, and no more than it gave her. The matter has been viewed in this light by the profession, for no lawyer ever thought of proceeding for dower in the Orphans' Court, a conclusive proof that her estate under the intestate laws is peculiar." Nor is there any case to be found in our books in which it has been ruled that the Orphans' Court has jurisdiction to assign to the widow of a testator, though he may have died seised of lands, either dower or an interest defined by the intestate laws in lieu of it, when she has refused to take the bequest or devise given to her by the will. I am aware that there are two or three *obiter dicta* to the effect that her remedy is in that court; there is no such decision. The impressions which led to the utterance of the dicta seem to have taken their rise in Thomas *v.* Simpson, 3 Barr 60, but they are entirely unsupported by it. That was an action of dower *unde nihil habet*, brought by a widow to recover dower out of lands which her husband had by will directed "should descend in the same manner as by the laws of this Commonwealth is directed where no will is made." The testator also devised to his widow for a term, another property, out of which dower was not demanded, to be held by her "in addition to her dower." It was ruled, and very correctly, that the action of dower could not be sustained. For if she took as a devisee a third of the lands out of which she demanded dower, ejectment was her remedy, and, if the lands were not devised, but descended under

7 W<span>R</span>.—31

[Bradfords *v.* Kents.]

the intestate laws, she was entitled not to dower, but to the interest which a widow takes under those laws in the intestate's estate, and that interest was, when the case was tried, recoverable only in the Orphans' Court. The Act of April 21st 1846 had not then been passed. It seems very evident that a mere direction in the will that the lands "should descend in the same manner as by the laws of this Commonwealth is directed where no will is made," was not a devise, but that it left a case of intestacy, and so this court then thought.

The question, therefore, was whether a widow is dowable as at common law out of lands of which her husband died seised and intestate. That of course was settled by the Intestate Law, which declared, that the share allotted to the widow in such a case shall be in lieu of her dower at common law. And, as at that time, her share under the intestate laws could be set apart to her only by partition in the Orphans' Court, of necessity, no writ of dower could be sustained. The Act of 1806 determined that. But no more was decided. The court spoke of a case of intestacy when the husband died seised. The opinion starts with the assumption that the property out of which dower was demanded had not been disposed of by will. The case of Galbraith *v.* Green, 13 S. & R. 85, was referred to as an exception, where an action of dower was held to be maintainable, even in a case of intestacy, against one who held the lands claiming title adversely to the heirs, and the court said, "indeed no case of intestacy is recollected (except where the husband dies out of possession of the premises) where an action of dower can be sustained. Where the widow has a complete and adequate remedy by statute, she is not permitted to resort to the common law remedy, and thereby disturb the harmony of the system prescribed by legislative enactment." Yet this case of Thomas *v.* Simpson has sometimes hastily been thought to rule the doctrine that the Orphans' Court has exclusive jurisdiction to assign a widow's dower in all lands of which her husband died seised, no matter whether he disposed of them by will or not, and casual remarks have been made to that effect, without noticing that the case was one of intestacy. Thus, in Myers *v.* Black, 5 Harris 193, Judge Black said, in illustration of his position that a common law remedy is not available where a statutory one has been given: "This court has also decided in Simpson *v.* Thomas, 3 Barr 60, that a widow whose interest in the estate of wh.ch her husband died seised and possessed, is withheld from her, must look to the Orphans' Court alone for redress, the action of dower being impliedly taken away by the statute which gave her another remedy." So in Holliday *v.* Ward, 7 Harris 485, the same judge remarked, "in Simpson *v.* Thomas, it was held that a widow's action for dower in land of which her husband died

seised, could not be maintained at common law." A similar thought was thrown out in Taylor v. Birmingham, 5 Casey 313, but it was unnecessary to the decision of the case, which was ejectment against a purchaser from a widow, to whom neither dower nor a share under the intestate laws had been assigned. None of these dicta, unqualified as they are, find any support in Thomas v. Simpson, or in any adjudicated case. There is no authority for the position that the action of dower is taken away either expressly or impliedly in any case, where the right of dower exists. The Orphans' Court has jurisdiction over the statutory substitute for dower, not over dower itself.

Neither in reason, nor by authority then can it be maintained, that a testator's widow who refuses to take under his will and elects dower, is debarred of her common law action against the testator's devisees, though he may have died seised of the lands devised, out of which dower is demanded. The first assignment of error is therefore not sustained.

The second and third assignments are quite unimportant and require no further notice from us than the expression of our opinion that they are without merit.

It remains only to consider the exception urged against the charge of the court respecting the effect of the evidence admitted to prove that the widow had elected to take under the will of her husband.

The will bequeathed to her during her widowhood, certain articles of personal property specifically described, and certain other articles which she was empowered to select. It also gave to her during her widowhood, the use of the farm, out of which dower is now claimed. The remainder of the personalty was directed to be sold and divided among the children. In case the widow married again, the testator directed that the farm should be divided equally among his four sons, who were required to make payments to the daughters. The will was dated on the 16th of February 1843, and admitted to probate on the 12th of March in the same year, letters testamentary being granted to Hannah Bradford, the widow, and to an executor. The articles bequeathed to the widow were inventoried in a distinct list for her, and in her presence, and she chose those which she was empowered to select. The appraised value of the articles was $553.12, and the inventory was filed on the 8th day of April 1843. It stated on its face, that it was "the inventory of the property taken by Hannah Bradford, as per the last will and testament of Henry Bradford, deceased." She continued to live on the farm until 1849, rented away portions of it, receiving the rents, sold a part of the personal property taken by her, said she had concluded to accept her husband's will, and wanted nothing changed he had done. In her own name, and without

[Bradfords *v.* Kents.]

joining the devisees of the land in remainder, or their guardian, she notified a tenant to quit, and she accounted to the estate neither for the personal property taken by her under the will, nor for the rents, or profits of the farm. In 1849, having married again, she left the farm, and eleven years thereafter joined her second husband in bringing this action of dower. It was in reference to this evidence and more of a similar character that the learned judge charged the jury as follows: " On the part of the plaintiff it is contended that she did not remain upon the land in pursuance of her estate under the will; but that, being left upon it, at the death of her husband with a family of small children, she remained there only for the purpose of keeping the children together, and raising them decently and advantageously upon their own land, and that she did actually manage it for their benefit and not for her own. If you should find that this was the true reason of her remaining upon the land, then that fact would not bar her recovery here. And we instruct you in like manner, respecting the acceptance of the farming utensils and personal property given her in the will. If she took these merely for the purpose of carrying on the business of the farm, and keeping up the household and maintaining the family, this would not be an election to accept it under the bequest."

I think this was putting the case to the jury more favorably for the demandant than the evidence warranted.

That an election may be evidenced by matter *in pais* as well as by matter of record is certain, and it was conceded in the court below. It is true, nothing less than unequivocal acts will prove an election, and they must be acts done with the knowledge of the party's rights, as well as of the circumstances of the case. Nothing less than an act of choice intelligently done will suffice. When the question is as it was in this case, whether a widow has elected to take a devise or a bequest under her husband's will, in lieu of dower at law, it is not sufficient to prove that she has been merely passive, or even that she has received the property given to her by the will, unless she knew the situation of her husband's estate, and the relative value of the properties between which she was empowered to choose. All this must be conceded. And so, even when a widow has the requisite knowledge, where an act done by her is equivocal, the intention with which the act was done is material to be considered. But a widow who, after having become acquainted with all that is necessary for her to know in order to make a binding election, receives the gift conferred by her husband's will, and uses it as her own, is not at liberty to say she did not intend to relinquish dower. Her acts are inconsistent with any other intention. They are not equivocal. She has no right to the gift except as a legatee or devisee, and her taking and using it is an admission

[Bradfords *v.* Kents.]

that she chooses to take under the will.  It necessarily involves an election, and in the case supposed, a case where there is full knowledge, it bars her dower.  There are undoubtedly decisions that a widow may elect dower even after she has claimed and received the legacy or devise made to her, but she nay not receive and hold the benefits conferred by the will of her husband, after the extent of her rights has become known to her, and then retract her election.

In the case before us, the widow was an executrix, and acted as such.  She took out letters testamentary.  It was her duty to inform herself of the situation, circumstances, and value of her husband's estate.  She must, therefore, be presumed to have known.  All the personalty was spread before her, and she took a large portion of it.  To no part of it had she any right except as legatee.  She took it expressly under the will, used it as her own, and never afterwards until this suit was brought, retracted this act of choice.  Not even yet has she returned or offered to return all that she claimed and received.  She continued on the farm as long as the will gave her a right to continue, and left when her estate under the will terminated.  Her continued possession was rightful if she held as devisee; it was wrongful if she had made no election to take under the will.

It was a fault in the instruction given by the learned judge to the jury, that he confounded a supposed motive for the widow's acts with the acts themselves.  We see no evidence that she continued on the farm *only* for the purpose of keeping the children together, or that she took the personal property *merely* for the purpose of carrying on the business of the farm, and keeping up the household, and maintaining the family, and it was erroneous, therefore, to submit the question whether she did to the jury.  But if such were her purposes and motives, they were perfectly consistent with her having elected to take under the will, and therefore the jury should not have been told that taking the property with such motives was not an election.  Maintaining the family, and keeping them together, may well have been the very objects which determined her choice, and led her to prefer taking under the will to claiming her dower at law.  The true question to be answered was, not what her motives were, or her purposes in regard to the property, but whether she had elected to take what her husband had given her by his will.

And had her acts of taking and using the legacy and devise been of doubtful import, the lapse of time before she asserted any claim against the will is a pregnant and decisive fact, overlooked in the presentation of the case to the jury.  She allowed seventeen years after she took the personal property to pass away before she brought this action.  Meanwhile, after her full enjoyment of the particular estate in the farm devised to

[Bradfords *v.* Kents.]

her, the land has passed to the devisees in remainder, who, in taking it, assumed to make payments to their sisters. It is at least presumable that the entire estate has been settled according to the directions of the will. Now, were it admitted that before 1849, while she remained in possession of the land, she might have denied that her acts were in pursuance of an election to take under the will, surely she cannot, eleven years after she removed from the farm, and after it had gone to the devisees for distribution. They might fairly have concluded she had no title to dower. I know of no case in which it has been held that a lapse of time of more than five years after acts done, which are usually treated as indicating an election, will not be binding upon a widow, and prevent her denial of an election, though the acts were done in ignorance of her rights. Here are seventeen years without ignorance. It would be inequitable for her now to disturb the devisees in remainder, or those claiming under them.

Judgment reversed, and a *venire de novo* awarded.